## Case No. 25-5028

---

In the United States Court of Appeals
for the Tenth Circuit

---

**United States of America**,
Plaintiff-Appellee,

v.

**Thomas Edward Petro,**
Defendant-Appellant.

---

On Appeal from the United States District Court
for the Northern District of Oklahoma
The Honorable Gregory K. Frizzell, District Judge
D.C. Case No. 4:24-00137-GKF-1

---

### Appellant's Opening Brief

---

Office of the Federal Public
Defender
633 17th Street, Suite 1000
Denver, Colorado 80202
Tel: (303) 294-7002
Fax: (303) 294-1192
Email: Jon_Grevillius@fd.org

Virginia L. Grady
Federal Public Defender

Jon W. Grevillius
Assistant Federal Public Defender

Attorneys for Appellant

Oral argument is requested.

September 19, 2025

# Table of Contents

Table of Authorities................................................................ iii

Prior or Related Appeals ...................................................... iii

Jurisdiction............................................................................1

Issue Presented ....................................................................1

Statement of the Case ..........................................................1

    1.   Mr. Petro communicates online with a "26-year-old" woman looking to meet older men. ......................................................2

    2.   Mr. Petro is charged with one count of coercion and enticement of a minor and goes to trial.......................................................4

    3.   Mr. Petro testifies he did not know M.B. was a minor. .............5

    4.   The government falsely tells the jury in closing that Mr. Petro had been stripped of the presumption of innocence. ..................6

Summary of Argument...........................................................7

Argument................................................................................8

The government committed plain misconduct during closing argument.8

    1.   This Court must reverse for plain error.......................................8

    2.   It was plainly improper for the government to argue that Mr. Petro was no longer presumed innocent. ....................................9

    3.   The government's improper arguments affected Mr. Petro's substantial rights........................................................................12

        A.   The government's negation of the presumption of innocence was especially provoking because it undermined a core constitutional right, was one of the last things jurors heard, and was magnified by a naked photo of Mr. Petro..............13

    B.    The mischaracterization of the presumption of innocence was especially harmful here, where jurors had to resolve Mr. Petro's and M.B.'s competing credibility to resolve the contested issue and evidence of guilt was not overwhelming. .......................................................................................... 14

    C.    The court's general instructions on the presumption of innocence and burden of proof did not ameliorate the harm. .......................................................................................... 18

    4.    Affirming Mr. Petro's conviction would undermine the fairness, integrity, and public reputation of judicial proceedings. ........... 21

Conclusion ................................................................................... 22

Statement Concerning Oral Argument ................................................. 22

Certificate of Compliance .................................................................. 23

**Attachment**

    1.  Judgment in a Criminal Case

# Table of Authorities

**Cases**

*Estelle v. Williams*, 425 U.S. 501 (1976) ................................................. 11

*Mahorney v. Wallman*, 917 F.2d 469 (10th Cir. 1990) ................. 11-15, 17

*Taylor v. Kentucky*, 436 U.S. 478 (1978) ................................................. 21

*United States v. Capps*, 112 F.4th 887 (10th Cir. 2024) ......................... 23

*United States v. Mozee*, 405 F.3d 1082 (10th Cir. 2005) ......................... 23

*United States v. Starks*,
   34 F.4th 1142 (10th Cir. 2022) ................................. 9, 11-15, 17, 20-24

**Statutes**

18 U.S.C. § 2422(b) ............................................................................... 3, 6

# Prior or Related Appeals

None.

## Jurisdiction

The district court had jurisdiction over Mr. Petro's case under 18 U.S.C. § 3231. The court entered judgment on February 27, 2025. Vol. I, 449-56.[1] Mr. Petro timely filed his Notice of Appeal on March 3, 2025. *Id.*, 457. This Court has jurisdiction under 28 U.S.C. § 1291.

## Issue Presented

Did the government commit plain misconduct in closing argument by instructing jurors that the "protective cloak" of the presumption of innocence had been removed, leaving Mr. Petro "naked in his guilt," during which it displayed to the jury a nude picture of him in the shower?

## Statement of the Case

Thomas Petro went to trial and was convicted on one count of coercing and enticing a minor to engage in sexual activity, 18 U.S.C. § 2422(b). The only contested issue was whether he knew that the complaining witness, M.B., whom he met through an anonymous social

---

[1] Citations to the record will refer to the volume number and page number ("Vol. [#], [page number]"). Page citations refer to the page number appearing on the bottom-right corner of the page.

media app and who initially represented herself to be a 26-year-old, was a minor.

On appeal, Mr. Petro argues that the government committed plain misconduct by falsely telling the jury during closing that, while Mr. Petro had been cloaked with the presumption of innocence at the beginning of trial, the cloak had been removed, leaving him "naked." The government made this improper argument indelible by simultaneously displaying a naked photo of Mr. Petro in the shower. This plain error warrants reversal because of the highly prejudicial character of the prosecution's argument and the absence of overwhelming evidence supporting the verdict.

1. **Mr. Petro communicates online with a "26-year-old" woman looking to meet older men.**

Much of what happened was not disputed. M.B. was at her friend's house during a sleepover when her friend suggested she create an account on the Whisper app, which was an anonymous social media service. Vol. III, 78. Users were assigned a username, which had nothing to do with the user's legal name, and they could not post pictures from their phones for their profile. *Id.*, 80.  M.B. created a

profile and claimed to be a 26-year-old woman interested in "older men." *Id.*, 159.

Mr. Petro, recently divorced, perused the Whisper app looking for anonymous online adult companionship without commitment. *Id.*, 248-49. He saw M.B.'s post claiming to be a 26-year-old female looking to meet older men, and he contacted her. *Id.*, 251. He provided his true age (31 years) and asked if it was acceptable. *Id.* M.B. responded that it was. *Id.* M.B. lied about her age. She was 13 years old, not 26. *Id.*, 82. She lied when she created the profile because she wanted to "play a pretend 'Catch a Predator.'" *Id.*

The two continued communicating back and forth over the Whisper app. Mr. Petro said he wanted the communications to be sexual, and M.B. agreed, affirming she was also looking for the same. *Id.*, 159-60, 252. Despite Mr. Petro's reluctance, M.B. convinced him to move their communications over to text messages from the Whisper platform. *Id.*, 84, 160. They swapped sexually explicit texts and photos, but M.B. took the lead on texting. *Id.*, 160-61. At one point, Mr. Petro sent M.B. a video of himself masturbating, and M.B. sent Mr. Petro sexually explicit videos. *Id.*, 95. Their back-and-forth communications,

3

which were through phone calls, texts, and video chats, lasted about 18 days. *Id.*, 167. Near the end of this, Mr. Petro withdrew and his responses dropped off. *Id.*, 166, 261. He sent M.B. his last text in the early morning hours of August 29th, but she continued to text him through August 30th. *Id.* at 166-67.

M.B. stopped contacting Mr. Petro on the 30th after other students at her school discovered she was sharing sexually explicit messages with an adult and reported it to school authorities. *Id.*, 154.

**2.    Mr. Petro is charged with one count of coercion and enticement of a minor and goes to trial.**

Mr. Petro was charged with one count of coercion and enticement of a minor under 18 U.S.C. § 2422(b). Vol. I, 10. He pleaded not guilty and went to trial.

The government argued that Mr. Petro knew, the night he and M.B. started communicating, that M.B. was 13. It relied on M.B.'s testimony she told Mr. Petro that night, through the Whisper app, that she was 13. *Id.*, 83. The government did not obtain records from Whisper, so what jurors heard about the communications over that platform came from M.B. and Mr. Petro's testimony alone. The government also relied on text messages in which Mr. Petro asked M.B.

4

not to tell anyone about their relationship and M.B. stating that she was turning 14 the next day to argue that he knew she was 13. *Id.*, 120. She sent this text referencing her birthday on August 23rd, two weeks after they started communicating. *Id.*, 266-67.

### 3.    Mr. Petro testifies he did not know M.B. was a minor.

Mr. Petro admitted to sending and receiving the explicit texts, communications, and videos (which were admitted into evidence), but he testified he believed he was communicating with an adult role-playing as a minor, rather than a minor masquerading as an adult. Vol. III, 254, 263. M.B. had originally wanted to role-play by pretending to be younger, and, true enough, some of her texts referenced, for example, homework, recess, and living with her parents. *Id.*, 103, 122, 160, 252, 263. Some of her texts, however, were far more mature: she made pop cultural references and discussed drinking alcohol, vaping, politics, and talking to other men. *Id.*, 256. These were topics that Mr. Petro said he believed would be discussed by an adult. *Id.*

Mr. Petro testified he did not know M.B.'s real age until sometime between August 26th and 27th, 16 or 17 days after they started communicating on the 10th. *Id.*, 261-62. According to Mr. Petro, M.B.

5

confessed early on in a Whisper message that she was not 26 but claimed she was 18—an adult but still a common age for a high school senior. *Id.*, 253. Thus, references to school and chores would not be unexpected. *Id.*, 255. Further, Mr. Petro acknowledged he asked M.B. not to tell anyone about their communications but only did so because he was worried about boyfriends coming after him and because he believed the age difference (18 and 31 years old) would be "frowned upon." *Id.*, 260. He stopped responding to her texts on August 29th. *Id.*, 166. As to M.B.'s August 23rd text stating it was her last day being 13 years old, Mr. Petro explained that he did not believe it was her birthday and that he thought M.B. was just continuing with role playing. *Id.*, 258.

4. **The government falsely tells the jury in closing that Mr. Petro had been stripped of the presumption of innocence.**

At the end of its initial closing argument, the government told jurors that Mr. Petro was no longer presumed innocent:

> The defendant began this trial cloaked with the presumption of innocence. Our job was to remove that cloak and I submit to you we have done so. With every text message, in every digital recording, and every image we have met our burden.

*Id.*, 298. The government then displayed to the jury a photo of Mr. Petro completely naked in the shower—a naked "selfie" he sent M.B., which was admitted into evidence over his objection *Id.*, 200, 298. Displaying this image, the government again argued that the presumption of innocence did not apply:

> Now, that you have heard all the evidence, I submit to you that we have successfully proven our case and removed that protective cloak entirely. The cloak has fallen to his feet and Thomas Edward Petro now stands before you naked in his guilt.

*Id.*

Defense counsel did not object, and the judge did not correct the prosecution's erroneous argument. The jury found Mr. Petro guilty, and the district court imposed a 140-month sentence, a substantial downward variance. *Id.*, 320, 366-69.

This appeal follows.

## Summary of Argument

This Court should reverse Mr. Petro's conviction because the prosecution committed obvious misconduct in closing argument. In *United States v. Starks*, 34 F.4th 1142 (10th Cir. 2022), this Court held that the government committed plain misconduct in closing by falsely

7

telling jurors that the presumption of innocence did not apply. The government did exactly the same thing here, falsely asserting that the cloak of the presumption of innocence had been removed.

This plainly improper argument affected Mr. Petro's substantial rights and requires reversal. The government burned its improper argument into the jurors' minds by displaying a picture of Mr. Petro naked in the shower and repeating its false claim that he was no longer cloaked in the presumption of innocence but, instead, stood "naked in his guilt." The improper argument may have affected the trial's outcome because Mr. Petro's credibility was central to his defense, the government's case was not overwhelming, and the trial judge failed to correct the government's misstatement of law of a bedrock principle of constitutional law.

**Argument**

**The government committed plain misconduct during closing argument.**

**1.    This Court must reverse for plain error.**

As noted, defense counsel did not object to the misconduct in the government's closing argument. Therefore, this Court must review for plain error, which requires that Mr. Petro show that the district court

8

erred; the error was plain; the error affected his substantial rights; and the error undermines the fairness, integrity, or public reputation of judicial proceedings. *See Starks*, 34 F.4th at 1175. The plain error standard is less demanding when, as here, the error negates a constitutional right. *See id.*

Mr. Petro shows that the district court plainly erred.

**2.    It was plainly improper for the government to argue that Mr. Petro was no longer presumed innocent.**

During closing argument, the government committed plain misconduct by falsely instructing jurors that the presumption of innocence did not apply. The presumption of innocence is "a basic component of a fair trial" and "remains with the accused throughout every stage of the trial, including, *most importantly, the jury's deliberations . . . .*" *Starks*, 34 F.4th at 1158 (quoting *Estelle v. Williams*, 425 U.S. 501, 503 (1976)); *Mahorney v. Wallman*, 917 F.2d 469, 471 n.2 (10th Cir. 1990) (emphasis added). The presumption is overcome only if the jury finds, beyond reasonable doubt, that the defendant is guilty. *Mahorney*, 917 F.2d at 471 n.2. Therefore, contrary to what the government instructed jurors, the defendant is presumed innocent throughout closing arguments. *Starks*, 34 F.4th at 1158.

9

Yet, despite this well-settled Fifth Amendment principle, the government twice told jurors that Mr. Petro should not be presumed innocent because it had already met its burden of proof. Vol. III, 298. These arguments were almost identical to those condemned in *Starks* and *Mahorney* and so were plainly improper.

In *Starks*, this Court condemned, as plainly improper, arguments that the defendant began trial clothed in the presumption of innocence but was "naked" at the time of closing argument. *See Starks*, 34 F.4th at 1154. And, in *Mahorney*, this Court concluded that the prosecution committed misconduct in closing by arguing that the defendant was in a "different position today" than at the beginning of trial because the "presumption has been removed." *See Mahorney*, 917 F.2d at 471-72. In both cases, this Court reasoned that the government's arguments negated two aspects of the presumption of innocence: the presumption remains with the defendant during every stage of trial—"most importantly, the jury's deliberations"—and that it is removed only upon the jury's finding that the defendant is guilty beyond reasonable doubt. *See Starks*, 34 F.4th at 1159 (quoting *Mahorney*, 917 F.2d at 471 n.2).

10

As in both *Starks* and *Mahorney*, the government contrasted Mr. Petro's position when trial began—when he was "cloaked with the presumption of innocence"—with his position at the time of closing, when he was not. Vol. III, 298. It told jurors it "*was*" its job to "remove that cloak," and that it removed the presumption of innocence "[w]ith every text message, every digital recording, and every image" because, in each exhibit, it met its burden of proof. *Id.* (emphasis added).

*Worse*, however, the government doubled down and built on its analogy that the presumption of innocence was like a piece of clothing long since removed by showing jurors Exhibit 14, which was a photo of Mr. Petro with no clothing in the shower. *Id.* It, again, told jurors, "[W]e have successfully proven our case and removed that cloak entirely. The cloak has fallen to his feet and Thomas Edward Petro now stands before you naked in his guilt." *Id.*

These arguments were obviously improper. Indeed, this Court held that the nearly identical statements in *Starks* were obviously, and so plainly, improper. *See Starks*, 34 F.4th at 1159-60 (discussing *Mahorney*, 917 F.2d at 472-73). That same conclusion must apply in this case.

**3.     The government's improper arguments affected Mr. Petro's substantial rights.**

To show that the government's misconduct affected his substantial rights, Mr. Petro must only show a "reasonable probability" the trial result would have been different without that misconduct. *See Starks*, 34 F.4th at 1157. A "reasonable probability" requires a lesser showing than is required to meet the preponderance of the evidence standard. *Id.*

When the government's misconduct "affirmatively negates a constitutional right," as what happened in Mr. Petro's trial, it "*seriously*" infringes upon that right. *Id.* at 1162 (quoting *Mahorney*, 917 F.2d at 473) (emphasis added). To determine the prejudice from the government's misconduct negating the presumption of innocence, this Court examines both whether the district court's instructions ameliorated the harm and the role the misconduct played in the case. *See id.* at 1158.

The prosecution's argument telling jurors the presumption of innocence did not apply affected Mr. Petro's substantial rights for three reasons.

**A.    The government's negation of the presumption of innocence was especially provoking because it undermined a core constitutional right, was one of the last things jurors heard, and was magnified by a naked photo of Mr. Petro.**

In *Starks*, this Court recognized that this error inherently carries a "strong potential for prejudice" to the accused because a misstatement of law that negates a bedrock constitutional right, "frequently results in a "serious infringement' of a defendant's constitutional rights." *See Starks*, 34 F.4th at 1162 (quoting *Mahorney*, 917 F.2d at 473). That strong potential for prejudice was realized here.

One of the last things the jurors heard in this trial was that the presumption of innocence no longer applied. As in *Starks*, where the government also made this argument in its initial closing argument, this improper argument's inauspicious timing magnified its prejudicial effect. *See Starks*, 34 F.4th at 1165.

However, in this case, the harm was magnified in spectacular fashion. The government displayed a picture of Mr. Petro naked in the shower during this argument to emphasize its point he stood before the jury metaphorically "naked in his guilt" and no longer "cloaked with the presumption of innocence." Vol. III, 298. Use of this photograph just

13

before deliberations served no purpose except to amplify the government's negation of a bedrock constitutional right and burn into the jury's mind that it should not presume Mr. Petro innocent. Through its visual analogy to literal nakedness, the government was showing jurors that nothing more than the "cloak" of the presumption of innocence protected Mr. Petro from a guilty verdict and that, now without it, he was necessarily exposed and so guilty.

Not only was that display and argument wanton, it was false: jurors still had to assess all the evidence, including Mr. Petro's testimony, and the government had to do more than ultimately remove the presumption of innocence to convict. It had to produce enough evidence to prove Mr. Petro's guilt beyond a reasonable doubt.

**B. The mischaracterization of the presumption of innocence was especially harmful here, where jurors had to resolve Mr. Petro's and M.B.'s competing credibility to resolve the contested issue and evidence of guilt was not overwhelming.**

The government's negation of Mr. Petro's presumption of innocence also prejudiced Mr. Petro's defense because the trial turned on the competing credibility of himself and M.B. and because evidence of guilt was not overwhelming. The government's misconduct "went

directly to a fundamental precept guiding the factfinder's evaluation of guilt or innocence," which is especially prejudicial when that determination rests on the competing credibility of the complaining witness and defendant. *See Mahorney*, 917 F.2d at 469. And where, as here, the evidence of guilt is not overwhelming, the right to be presumed innocent is "especially important." *Starks*, 34 F.4th at 1175.

The evidence did not conclusively confirm M.B.'s account nor disproportionately discredit Mr. Petro's. *See Mahorney*, 917 F.2d at 474 (concluding on habeas review that the petitioner was entitled to a new trial on state charges because the trial came down to the credibility of the petitioner and complaining witness, neither of which was conclusively confirmed by other evidence). M.B. and Mr. Petro offered conflicting testimony about when she disclosed her true age—after having lied about it to attract attention—which made witness credibility central to the jury's determination.

According to M.B., she told Mr. Petro her real age on the Whisper app the night they started communicating. Vol. III, 84. But the government never sought records from those communications, and M.B.

15

deleted and re-installed that app multiple times throughout her communications with Mr. Petro. *Id.*, 84.

The government relied on M.B.'s testimony about what she told Mr. Petro and some of their communications to argue that he knew she was 13 years old. For example, the government presented a text message in which she said it was her last day being 13 years old, which she sent on August 23rd (13 days after the two started communicating). *Id.*, 266-67.

However, M.B.'s testimony was rebutted. For example, M.B. admitted that *she* wanted to role play as a younger person and told Mr. Petro as much. *Id.*, 160. While their texts referenced an age discrepancy, this was consistent with M.B. wanting to role play and consistent with Mr. Petro's testimony he believed she was 18. She also acknowledged she liked Mr. Petro and did not want him to know her age out of fear he would stop communicating with her. *Id.*, 168.

As M.B. admitted, *she* took the lead in communicating with Mr. Petro, and she was more persistent. Moreover, Mr. Petro withdrew from responding to M.B., which she noticed and told him, "You know what, don't worry about it anymore, its ok baby we don't have to do it, im not

16

gonna force you. I don't want to be one of those people and I feel like I'm turning into one of them." *Id.*, 165.

Mr. Petro testified he discovered M.B. was 13 around the 26th or 27th of August, which is when his communications with her started to drop off. *Id.*, 164-66, 269-70. He explained that he did not want to confront her about misrepresenting her age and decided to "quietly walk away from" her. *Id.*, 262. During their last phone call, M.B. became "very upset" with Mr. Petro when he mentioned ending their relationship. *Id.*, 261. He was worried about possibly being extorted or set up or that M.B. could be upset and seek revenge against him, *id.*, which was not baseless—M.B. testified she created a Whisper profile and lied about her age in the first place because she wanted to "play pretend 'Catch a Predator.'" *Id.*, 82. Accordingly, Mr. Petro did not cease texting M.B. altogether after he learned her age: he texted her, for example, on August 29th, stating "goodnight my love." *Id.*, 270.

As to why he told M.B. not to tell others, Mr. Petro explained that a 31-year-old communicating in this way with an 18-year-old high school student would be frowned upon. *Id.*, 260. So, for example, he did not want her mother to find out about their communications because

M.B. lived in a strict household. *Id.*, 260-69. Also, he knew M.B. had a boyfriend whom she discussed, and he did not want to have the boyfriend seek him out. *Id.*, 256.

### C. The court's general instructions on the presumption of innocence and burden of proof did not ameliorate the harm.

As in *Starks*, the district court's instructions of law did not ameliorate the harm from the government's arguments for two reasons. *See Starks*, 34 F.4th at 1161. First, the jury instructions contained only general—and minimal—discussion of the presumption of innocence and so were not specific enough to contradict the government's argument or blunt its impact. *See id.* Second, the court did not instruct the jurors on the presumption of innocence when it read aloud jury instructions at the close of evidence. *See id.* at 1163-64. Instead, the court orally instructed jurors on the presumption following jury selection, days before they had to apply the law during deliberations.

The district court's instructions mentioned the presumption of innocence only in Jury Instruction 1, which briefly stated (twice) that "the defendant is presumed innocent." Vol. I, 391-92. Only in this instruction did the court explain that the charge against Mr. Petro is

18

not evidence, a corollary of the presumption of innocence. *Id*. at 391; *see Taylor v. Kentucky*, 436 U.S. 478, 485 (1978). Yet Instruction 1 did not instruct jurors that the presumption lasts throughout the entire trial nor did it inform jurors when and how that presumption may be removed.

Further, the court's other instructions, for example, those on the burden of proof, did not ameliorate the harm. *See Starks*, 34 F.4th at 1160-61. A correct instruction on the burden of proof does not overcome argument that the presumption of innocence does not apply. *Id*. at 1161. Despite the logical similarity between the presumption of innocence and the burden of proof, jurors glean "significant additional guidance" from an instruction on the presumption of innocence that an instruction on the burden of proof does not offer. *See Taylor*, 436 U.S. at 484-85, 488. With no specific instruction affirmatively correcting the government's arguments, the court letting the government's misstatements about the presumption stand uncorrected conveyed to jurors that the court condoned this misstatement of law. *See Starks*, 34 F.4th at 1161.

19

Also, like *Starks*, the court did not read aloud the instruction discussing the presumption of innocence at the close of evidence. *See id.* at 1163. It read aloud this instruction (Instruction 1) only at the beginning of trial. The court purposefully skipped re-reading aloud Instruction 1 at the close of evidence, reminding jurors it read aloud that instruction at the beginning of trial. Vol. III, 287. This made the prosecution's misstatement of law even more problematic because jurors would have had to rely on their memory from two days before to recall that the defendant *is* presumed innocent. *See Starks*, 34 F.4th at 1163-66 (concluding that the judge's decision to read aloud all jury instructions only before trial further prejudiced the defendant even though jurors had a written set of instructions to use in deliberations). Additionally, that instruction did not conflict with government's argument regarding the presumption of innocence (failing to explain how long the presumption lasts, *supra*), and its omission from the final oral instructions only further suggested to jurors that the prosecution's argument was a correct statement of law.[2] *Cf. United States v. Capps,*

---

[2] Mr. Petro does not assert that the district court's decision not to reread Instruction 1 at the close of evidence was error. Rather, not reinstructing the jury on the presumption of innocence under these

112 F.4th 887, 898 (10th Cir. 2024) ("[T]here is probably no better way to convey the dignity and importance of the proceedings than for the presiding judge to read the instructions as the jurors retire to deliberate.").

### 4. Affirming Mr. Petro's conviction would undermine the fairness, integrity, and public reputation of judicial proceedings.

The final prong of plain error is satisfied. Where the district court committed an error of constitutional magnitude, "reversal usually directly cures the constitutional infirmity and, as a result, the failure to notice and correct the constitutional error would impugn the fairness, integrity, or public reputation of judicial proceedings." *Starks*, 34 F.4th at 1175 (quoting *United States v. Mozee*, 405 F.3d 1082, 1091 (10th Cir. 2005)); *see also id.* at 1157 (stating that the court applies the plain error rule "less rigidly" when reviewing constitutional error).

No countervailing factors support affirmance despite the plain constitutional error here. The evidence of guilt was not overwhelming, and jurors had to resolve the contested issue based on the competing

---

circumstances made the court's failure to correct the government's misstatement of law more harmful.

21

testimony of M.B. and Mr. Petro. Informing jurors that the bedrock presumption of innocence did not apply therefore cannot go uncorrected. *See id.* at 1175-76.

## Conclusion

This Court should reverse Mr. Petro's conviction.

## Statement Concerning Oral Argument

Counsel for Mr. Petro requests oral argument because he believes it will assist this Court in deciding this case.

Respectfully submitted,

Virginia L. Grady
Federal Public Defender

By: */s/ Jon W. Grevillius*
Jon W. Grevillius
Assistant Federal Public Defender
633 17th Street, Suite 1000
Denver, Colorado 80202
(303) 294-7002
Email: Jon_Grevillius@fd.org

22

## Certificate of Compliance

As required by Fed. R. App. P. 32(g)(1), I certify that this brief is proportionally spaced and contains 4,162 words.  I relied on my word processor to obtain the count, and the information is true and correct to the best of my knowledge.


*/s/ Jon W. Grevillius*
Jon W. Grevillius
Assistant Federal Public Defender